UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| ERIC ERICSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2:14-cv-315-GZS |
| | ) | |
| SCOTT LANDRY, WARDEN, | ) | |
| MAINE CORRECTIONAL CENTER | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

In 2010, Petitioner Eric Ericson was convicted in state court of gross sexual assault, unlawful sexual contact, and sexual abuse of a minor. In this action, Petitioner seeks relief from the judgment pursuant to 28 U.S.C. § 2254. (Petition, ECF No. 1.)

Petitioner contends that he is entitled to relief because (1) the state court erred in limiting his cross-examination at trial of the victim and witnesses; (2) the court denied his right to testify; (3) the court improperly excluded expert testimony; and (4) the court imposed a sentence that "was too harsh." In his petition, Petitioner raises several additional issues that he argued in his state court post-conviction petition, and he includes some allegations that he failed to raise in state court.[1] The State has moved to dismiss the petition.

---

[1] Petitioner's pleadings also include allegations regarding his housing and other conditions of his confinement. (Reply, ECF No. 12 at 1-3; Amended Reply, ECF No. 13 at 1-2.) Claims concerning prison conditions must be brought, if at all, through the prison's grievance procedure and 42 U.S.C. §§ 1983, 1997e. *See Figueroa v. Rivera*, 147 F.3d 77, 81 (1st Cir. 1998) (citing *Heck v Humphrey*, 512 U.S. 477, 486-87 (1994)). In the amended reply, Petitioner also renews his request for the appointment of counsel. (Amended Reply at 2.) The request is denied for the reasons previously stated. (ECF Nos. 8, 10).

As explained below, after a review of the petition and the record, and after consideration of the parties' arguments, the recommendation is that the Court grant the State's request and dismiss the petition.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner was indicted in 2006 for gross sexual assault (Class A), 17-A M.R.S. § 253(1)(B); unlawful sexual contact (Class C), 17-A M.R.S. § 255-A(1)(E), and sexual abuse of a minor (Class C), 17-A M.R.S. § 254(1)(A-2). (Docket Sheet at 2, State Court Record ("Record"), Vol. I; Indictment at 1, Record, Vol. I.) *State v. Ericson*, CARSC-CR-06-249 (Me. Super. Ct., Aro. Cnty., July 14, 2006). Following a four-day jury trial, Petitioner was convicted on all three charges. (Docket Sheet at 13-15; Judgment and Commitment, Record, Vol. I.) The court sentenced him in April 2010 to a term of 17 years in prison on the gross sexual assault charge, with all but 12 years suspended, followed by a term of four years of probation. (Docket Sheet at 15; Judgment and Commitment.) On each of the other two charges (unlawful sexual contact, sexual abuse of a minor), the court sentenced Petitioner to five years in prison, concurrent with the 17-year sentence. (Docket Sheet at 16; Judgment and Commitment.)

The Sentence Review Panel denied Petitioner's request for a discretionary appeal of his sentence. (Sentence Review Panel Docket No. SRP-10-284, Record, Vol. II; Order Denying Leave to Appeal from Sentence, Record, Vol. II.) In his direct appeal, Petitioner raised three of the issues that he now cites in his section 2254 petition. He argued on appeal that the trial court (1) abused its discretion in excluding the testimony of Petitioner's expert witness; (2) erred in determining that Petitioner had waived his right to testify; and (3) abused its discretion in limiting the scope of Petitioner's cross-examination of the victim. *State v. Ericson*, 2011 ME 28, ¶ 1, 22, 13 A.3d 777.

The Law Court affirmed the judgment. *Id.* Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court.

In accordance with 15 M.R.S. § 2129, in June 2011, Petitioner filed a state court post-conviction petition. (Post-conviction Docket Sheet at 1, Record, Vol. I; State Court Petition, Record, Vol. II.) *Ericson v. State*, CARSC-CR-2011-00256 (Me. Super. Ct., Aro. Cnty., June 3, 2011). Counsel filed an amended petition in December 2011, and in November 2012, the state court conducted an evidentiary hearing on the petition. (Post-conviction Docket Sheet at 1, 3.)

In January 2013, the Superior Court denied relief and dismissed the petition and the amended petition. (*Id.* at 3; Post-conviction Decision, Record, Vol. II.) In February 2013, Petitioner filed an application for a certificate of probable cause, seeking discretionary review from the Law Court. (Law Court Docket at 1, Record, Vol. II.) *Ericson v. State*, ARO-13-196 (Me. Feb. 14, 2013). In June 2013, counsel filed a memorandum in support of Petitioner's application for discretionary review. (Law Court Docket at 1; Memorandum in Support of Certificate of Probable Cause, Record, Vol. II.) On August 6, 2013, after consideration of Petitioner's application, the Law Court entered an order denying a certificate of probable cause. (Law Court Docket at 2; Order Denying Certificate of Probable Cause, Record, Vol. II.)

Petitioner asserts that he signed the instant petition on July 15, 2014, and he apparently placed it in the prison mailing system on July 28, 2014. (Petition at 15.) The petition was filed on August 7, 2014. (*Id.* at 1.) The State, in response to the Court's order to answer and in accordance with Rule 5 of the Rules Governing Section 2254 Cases, filed the state court record and an answer seeking dismissal. (Order to Answer, ECF No. 4; Answer, ECF No. 5; Record, ECF No. 6.)[2] Petitioner requested that counsel be assigned, and the Court denied that request. (Motion, ECF

---

[2] The state court record was filed in paper form, in two bound volumes. (State Court Record ("Record"), Vols. I, II.)

No. 7; Order, ECF No. 8.)  Petitioner filed a reply in response to the State's answer, followed by a motion to amend that incorporated the reply by reference along with the amended reply.  (Reply, ECF No. 12; Motion to Amend and Amended Reply, ECF No. 13.)  The Court granted Petitioner's motion to amend the reply. (Orders, ECF Nos. 14, 15.)

## II.  DISCUSSION

Pursuant to 28 U.S.C. § 2254(a), a person in custody pursuant to the judgment of a state court may apply to a federal district court for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  A petition may not be granted, however, if the petitioner does not first exhaust available state court remedies. 28 U.S.C. §2254(b).[3]  As to federal habeas claims that were adjudicated on the merits in state court, the federal court may not grant relief unless (1) the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," pursuant to 28 U.S.C. §2254(d)(1), or (2) the decision "was

---

[3] Title 28 U.S.C. § 2254(b) and (c) address exhaustion requirements and state:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that−

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B)  (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

based on an unreasonable determination of the facts," pursuant to section 2254(d)(2).[4] "It is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'" *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (quoting *Harrington v. Richter*, 131 S Ct. 770, 786 (2011)). The Supreme Court has described this as a "deferential standard" and noted: "Only rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Id.* The state court's factual findings are "presumed to be correct," unless the petitioner can rebut the presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## A. The Exhausted Claims

### i. Claims addressed in the direct appeal

#### a. Limitation on cross-examination

Petitioner first alleges that records of the Department of Health and Human Services and the testimony of the victim's father would have shown that the victim had a history of fabricating allegations, particularly an allegation that the victim's father tied the victim's hands around a pole in the family's basement. (Petition at 5; Amended Reply, ECF No. 13 at 4, 6-7.)[5] At trial, counsel

---

[4] Title 28 U.S.C. § 2254(d) addresses claims that were adjudicated on the merits in state court and states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

[5] The victim was adopted by her mother and father. *State v. Ericson*, 2011 ME 28, ¶ 2 n.1, 13 A.3d 777. The victim's mother testified that she was charged with visual sexual aggression and endangering the welfare of a minor as a result of her involvement in some of the incidents that led to the charges against Petitioner. (Trial Tr. I at 108, Record, Vol. I.) She pled guilty to the charge of endangering the welfare of a minor. (*Id.*)

explained that the evidence supported the defense theory that the victim fabricated stories to get out of her mother's house, and that her allegation against Petitioner, like her allegation against her father, was motivated by her desire to get out of the house and remain in her foster home. (Trial Tr. II at 137-40, Record, Vol. I.) Petitioner argues that the trial court erred when it excluded, under Rule 608 of the Maine Rules of Evidence, both the cross-examination of the victim and the use of extrinsic evidence during that cross-examination. (Petition at 5.)[6]

Petitioner preserved the objection at trial and on appeal raised a federal confrontation clause issue. (Trial Tr. II at 139-41; Brief for Appellant at 8-12, Record, Vol. II.) In his appellate brief, citing Rule 608(b), the Sixth and Fourteenth Amendments to the United States Constitution, and *Davis v. Alaska*, 415 U.S. 308 (1974), Petitioner argued that the trial court deprived him of his right to confront witnesses when the court precluded him from cross-examining the victim regarding her allegations against her adoptive father. (Brief at 8, 12.)

The Law Court upheld the trial court's exclusion of the evidence. The Court reasoned in part that the evidence was collateral, and its admission could have generated a trial within a trial as to whether the victim or her father was telling the truth, thereby confusing the issues. *Id.* ¶ 22. The evidence thus failed the balancing test of Rule 403.[7] The Law Court held: "[A]lthough we recognize that exposure of a complaining witness's motivation 'is a proper and important function

---

[6] Rule 608(b) of the Maine Rules of Evidence states in part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

[7] Rule 403 of the Maine Rules of Evidence states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

of the constitutionally protected right of cross-examination,' in this case the court acted within its discretion in excluding the testimony Ericson sought to elicit from the victim." *Id.* ¶ 22 (quoting *State v. Filler*, 2010 ME 90, ¶ 17, 3 A.3d 365).

The Supreme Court has recognized that "[t]he rights to confront and cross-examine witnesses and to call witnesses in one's own behalf" are "essential to due process." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). In *Jackson*, the Supreme Court addressed the constitutionality of a Nevada statute that is similar to Rule 608 in that it "generally precludes the admission of extrinsic evidence of specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime." *Jackson*, 133 S. Ct. at 1992-93 (quotation marks and alteration omitted). The Court concluded that "the Nevada statute is akin to the widely accepted rule of evidence law that generally precludes the admission of evidence of specific instances of a witness' conduct to prove the witness' character for untruthfulness. The constitutional propriety of this rule cannot be seriously disputed." *Id.* at 1993 (citing *inter alia* Fed. R. Evid. 608(b)).

In *Jackson*, the primary issue was the exclusion of extrinsic evidence, and the Supreme Court noted that "'the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to . . . expose [testimonial] infirmities through cross-examination.'" *Id.* at 1994 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985) (per curiam)). Although Petitioner's case involved the exclusion of both the cross-examination and extrinsic evidence, the trial court observed that it had already permitted extensive cross-examination of the victim on the issue of her motivation for accusing Petitioner. (Trial Tr. II at 138.) Because the trial court had permitted cross-examination of the victim on her underlying motivation, the trial court did not deprive Petitioner of his right to cross-examine when the court excluded both cross-examination and

extrinsic evidence regarding the victim's allegation about her father. In short, the Law Court's decision was not "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," pursuant to 28 U.S.C. §2254(d)(1).

### b. Waiver of the right to testify

Petitioner claims in Ground Two of the petition that the trial court denied his right to testify in his own defense. (Petition at 7.) Petitioner's argument is based on an exchange in which the court sustained the State's objection to Petitioner's testimony, yet Petitioner "continued to describe the inadmissible evidence over the court's and the court officer's orders that he stop." *Ericson*, 2011 ME 28, ¶ 5. The trial court advised Petitioner that although he had the right to testify, the right "carries with it a responsibility to testify consistent with the rules of this court and in particular consistent with [the court's] direction." (Trial Tr. III at 69, Record, Vol. I.) The court warned Petitioner that if he refused to limit his testimony to admissible matters, he would waive his right to participate in the trial. (*Id.* at 69-70, 74.) The court asked whether Petitioner understood "the words" of the warning, regardless of whether he agreed with them; Petitioner answered that he understood. (*Id.* at 70.) The court asked counsel to consult with Petitioner to ascertain his intent. (*Id.* at 75.) After a recess, the court asked Petitioner if he would follow the court's instructions, and Petitioner said only, "I am prepared to tell the truth." [8] The court found

---

[8] The following is the court's final questioning of Petitioner about his waiver of the right to testify:

> THE COURT: . . . [I]f you are allowed to testify, will you be following my directions in terms of when to testify and when not to should I interrupt your testimony?

> THE DEFENDANT:      I will tell the truth.

> THE COURT:      That's not the question that I asked you. And my question to you – I'm going to ask it only one more time because what you are risking, sir, is to pursue your right to testify by your conduct being inconsistent with my directions. Are you prepared to follow my directions in terms of your stopping testifying when you testify and in my judgment it's in violation of the Rules of Evidence or other rules? Are you prepared to follow my directions?

> THE DEFENDANT:      I am prepared to tell the truth.

that, by Petitioner's conduct, he had waived the right to testify. (*Id.* at 81-82.) The Law Court held that "[b]ased on the totality of the circumstances, the trial court could properly infer that Ericson had intentionally waived his right to testify." *Ericson*, 2011 ME 28, ¶ 18.

The Supreme Court has recognized that the right to testify in one's own defense is fundamental and "has sources in several provisions of the Constitution," including the Sixth and Fourteenth Amendments. *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987). However, as the Law Court held, "[t]he right to testify does not relieve a defendant from compliance with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *Ericson*, 2011 ME 28, ¶ 17 (quoting *Chambers*, 410 U.S. at 302). "Numerous state procedural and evidentiary rules control the presentation of evidence and do not offend the defendant's right to testify." *Rock*, 483 U.S. at 55 n.11 (citing *Chambers*, 410 U.S. at 302). The Law Court's determination that given the totality of the circumstances, including Petitioner's refusal "to agree to confine his testimony to matters admissible under the rules of evidence," was not contrary to, and did not unreasonably apply, clearly established Supreme Court precedent. *Ericson*, 2011 ME 28, ¶ 18.

### c. Admissibility of expert witness testimony

Petitioner argues that the court improperly excluded the expert testimony of a licensed clinical psychologist who evaluated Petitioner for psychosexual interest patterns and found that Petitioner did not show a sexual interest in children or violence. (Petition at 8.) The Law Court

---

THE COURT: That answer is inconsistent with my question, and I'm directing by your conduct you have waived your right to testify in this courtroom. You may be seated.

(Trial Tr. III at 81-82, Record Vol. I.) At the post-conviction hearing, Petitioner testified that if he had been permitted to continue with his testimony, he would have testified that he was innocent; he would have testified about his personal background and the household; and he would have testified that the victim failed to use many opportunities available to report the abuse. (Post-conviction Tr. at 38-39, Record, Vol. II.)

held that the trial court did not abuse its discretion in concluding that the evidence was neither reliable nor relevant. *Ericson*, 2011 ME 28, ¶¶ 13-14.

The State, pursuant to 28 U.S.C. §2254(b)(1)(A), contends that Petitioner did not exhaust his available state court remedies because he did not raise a federal claim in his direct appeal in state court. (Response, ECF No. 5 at 6.) The Court need not address the exhaustion argument, however, because Petitioner had no federal constitutional claim to exhaust. See 28 U.S.C. § 2254(b)(2). Unless an evidentiary ruling is "so fundamentally unfair as to deny due process," it is a matter of state law. *Palmariello v. Superintendent of Mass. Corr. Inst.-Norfolk*, 873 F.2d 491, 494 (1st Cir. 1989) ("Habeas review does not ordinarily encompass garden-variety evidentiary rulings."); *Moran v. Vose*, 816 F.2d 35, 36 (1st Cir. 1987) (per curiam). "[O]rdinarily, issues concerning the admission of evidence, scope of cross examination, or the like present solely state law questions (which are not matters proper for a § 2254 petition) and are not of constitutional dimension." *Moran*, 816 F.2d at 36 (holding that the district court erred in entering a summary dismissal on the basis of the petition alone when neither an answer nor the trial transcript had been filed); *Aviles v. Archuletta*, 389 F. App'x 853, 857-58 (10th Cir. 2010) (holding that the exclusion of a statement by the defendant and other evidence was not fundamentally unfair). In this case, the Law Court's conclusion that the expert testimony was unreliable and therefore not relevant was not fundamentally unfair and the issue is not one of constitutional dimension. Accordingly, the issue is one that is properly decided solely under state evidentiary rules. Petitioner's challenge to the evidentiary ruling thus fails.

### ii. Length of the sentence

Petitioner next claims that the court's sentence was "too harsh." (Petition at 10.) The Law Court denied a discretionary appeal of his sentence. (Order Denying Leave to Appeal from

Sentence.)  Although the record does not reflect whether Petitioner raised, in his request for a discretionary state court appeal, a federal constitutional issue with respect to his challenge to the sentence, the merits of Petitioner's argument will be considered, pursuant to section 2254(b)(2).[9]

In a federal constitutional review of the length of the sentence, this Court is limited "to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).[10]  "The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.'" *Miller v. Alabama*, 132 S. Ct. 2455, 2463 (2012).  The Supreme Court explained that the right to a sentence that is proportionate to the crime is "'central to the Eighth Amendment.'" *Id.* at 2463 (quoting *Graham v. Florida*, 560 U.S. 48, 59 (2010)).  As the Court held in *Graham*, however, the Eighth Amendment "'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are grossly disproportionate to the crime.'" *Graham*, 560 U.S. at 59-60 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1000-01 (1991) (Kennedy, J., concurring in part and concurring in judgment) (quotation marks omitted)).

The Supreme Court has also held that it is clearly established under section 2254(d)(1) that "[a] gross disproportionality principle is applicable to sentences for terms of years." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).  The Court noted that the principle will be applied only in the "'exceedingly rare' and 'extreme' case." *Id.* at 72-73 (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in judgment)).  In *Graham*, the Court held that to

---

[9] To the extent that Petitioner challenges his sentence as a violation of state law, that ground is not cognizable under section 2254, which addresses violations of federal law.  *See* 28 U.S.C. § 2254(a); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus relief does not lie for errors of state law").

[10] The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

determine "whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, . . . [a] court must begin by comparing the gravity of the offense and the severity of the sentence," and, "'in the rare case in which this threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Graham*, 560 U.S. at 60 (quoting *Harmelin*, 501 U.S. at 1005) (Kennedy, J., concurring in part and concurring in judgment) (alterations omitted)).

In this case, the court sentenced Petitioner to a term of 17 years of imprisonment, with all but 12 years suspended, for gross sexual assault, which is a Class A crime. 17-A M.R.S. § 253(1)(B). The relevant state statute provides that "the court shall set a definite period not to exceed 30 years" for Class A crimes. 17-A M.R.S. § 1252(2)(A). The court also sentenced Petitioner to a term of five years of imprisonment for unlawful sexual contact, which is a Class C crime, 17-A M.R.S. § 255-A(1)(E), and sentenced him to a term of five years of imprisonment for sexual abuse of a minor, which is a Class C crime, 17-A M.R.S. § 254(1)(A-2). Under Maine law, for Class C crimes, "the court shall set a definite period not to exceed 5 years." 17-A M.R.S. § 1252(2)(C).

As the court discussed at sentencing, the crimes that Petitioner committed were serious, given the nature of Petitioner's conduct, the circumstances by which he obtained access to the victim, the nature and duration of the abuse, the Petitioner's use of intimidation and manipulation of the victim, the age of the victim, the effect of Petitioner's conduct on the victim, and the lack of mitigating factors. (Sentencing Tr. at 40-44, Record, Vol. I.) Although the sentence was significant, the sentence simply was not grossly disproportionate to the crime.[11] Because under

---

[11] Courts in some jurisdictions have concluded that a sentence within the state statutory range for the crime of conviction cannot form the basis of a federal habeas claim. *See Underwood v. Kelly*, 692 F. Supp. 146, 152 (E.D.N.Y.

the circumstances one cannot reasonably infer a gross disparity, the Court need not compare Petitioner's sentence with the sentences of other offenders in this jurisdiction or with sentences imposed for the same crime in other jurisdictions. *See Graham*, 560 U.S. at 60.

### iii.  Claims addressed in the state court post-conviction

Petitioner attached to his section 2254 petition a statement of facts by which Petitioner challenged each of the issues decided by the state court in Petitioner's post-conviction case, and raised issues that he had not argued in the state court post-conviction proceeding. (Petition at 16-23; Post-conviction Decision.)[12]  Petitioner claimed that he did not receive effective assistance of counsel at the trial and sentencing, and he also claimed that he was not competent at trial due to a prescription drug overdose. (State Court Petition.)

### a.  Petitioner's prescription drug use and competence at trial

In his federal petition, Petitioner alleges that he overdosed on oxycodone during the trial, and that although he testified at the post-conviction hearing that the medication did not affect his memory, the medication caused him to disregard the court's order to stop talking about inadmissible evidence. (Petition at 19; Post-conviction Tr. at 34-37.)  The state court rejected Petitioner's post-conviction claim that he was not competent to stand trial on the day that he testified. (Post-conviction Decision at 5.)  The court was not persuaded either that Petitioner was under the influence of drugs at that time, or that counsel was aware that Petitioner was under the

---

1988) (holding that there is no cognizable federal constitutional issue raised when a sentence imposed by a state court was within the bounds of the state sentencing statutes), *aff'd*, 875 F.2d 857 (2d Cir. 1989); *Webb v. LaClair*, No. 10 Civ. 7603 (PGG) (HBP) 2014 WL 4953559, *9, 2014 U.S. Dist. Lexis 140542, *22-23 (S.D.N.Y. Sept. 30, 2014) (same); *Altamirano v. Schriro*, No. CV-08-137-TUC-DCB, 2008 WL 4704209, *2, 2008 U.S. Dist. Lexis 87779, *5-6 (D. Ariz. Oct. 24, 2008) (same).

[12] In an action brought pursuant to 28 U.S.C. § 2254, this Court reviews the final reasoned opinion of the state court. *See Kidd v. Lemke*, 734 F.3d 696, 703 (7th Cir. 2013).  In this case, because the Law Court denied a certificate of probable cause for an appeal, the Superior Court's post-conviction judgment, entered January 16, 2013, is the final reasoned opinion of the state court as to the issues decided on post-conviction. (Post-conviction Docket Sheet at 3, Record, Vol. II.)

influence of drugs. (*Id.*)[13]  The state court's finding is presumed correct, and federal habeas relief may not be granted unless (1) Petitioner presents clear and convincing evidence to rebut the presumption of correctness, pursuant to 28 U.S.C. § 2254(e)(1), and (2) this Court determines that the state court post-conviction decision was based on an unreasonable determination of that finding, pursuant to 28 U.S.C. § 2254(d)(2).

The Supreme Court has observed: "We have repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.'"  *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (quoting *Medina v. California*, 505 U.S. 437, 453 (1992)).  "The test for incompetence is also well settled.  A defendant may not be put to trial unless he 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him.'"  *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)) (quotation marks omitted).  In Petitioner's case, the trial court asked counsel to consult with Petitioner, and subsequently confirmed Petitioner's response with counsel.  (Trial Tr. III at 76, 78.)  The court then addressed Petitioner directly, and based on his discussion with Petitioner and with Petitioner's counsel, the court found that Petitioner understood that if Petitioner refused to follow the court's direction, Petitioner would be deemed to have waived his right to testify.  (Trial Tr. III at 81-82.)

Simply stated, Petitioner has failed to identify any reliable evidence to rebut the presumption that the court's finding was correct, under section 2254(e)(1).  Given the evidence presented at the post-conviction hearing, Petitioner thus has failed to demonstrate that the state

---

[13] Counsel testified in the post-conviction hearing that he was aware at the time of the trial that Petitioner took pain medication, but he did not see Petitioner taking "copious amounts" of medication, and he did not have the impression that Petitioner's behavior was affected by the medication at the trial.  (Post-conviction Tr. at 71-72.)

court's finding that Petitioner was not incapacitated when he waived his right to testify was unreasonable.

### b. Ineffective assistance at trial[14]

Petitioner claims that trial counsel was ineffective because counsel (1) failed to follow the recommendations of a jury consultant who conducted a mock trial; (2) failed to secure the presence of a nurse who examined the victim; (3) failed to call a computer expert; (4) failed to call alternate suspects; (5) did not call all of the witnesses whose names appeared on a list that counsel had prepared; and (6) made a damaging statement in closing argument. (Petition at 18-23; Post-conviction Tr. at 3, Record, Vol. II.)

To succeed on a claim of ineffective assistance of counsel, a petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012). The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests. *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011). A district court reviewing such claims need not address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

As for the "cause" test, the court must be "fairly tolerant" of counsel's performance because the Constitution does not guarantee a perfect defense. *Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (quoting *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994)). The issue is whether counsel's performance was "'within the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.'" *Bucci*,

---

[14] Two attorneys represented Petitioner at trial, and both were present for the entire trial. One of the attorneys testified in the post-conviction hearing. For simplicity, the two attorneys are referred to as a single counsel at trial.

662 F.3d at 30 (quoting *Strickland*, 446 U.S. at 688-89). "Judicial scrutiny of the defense counsel's performance is 'highly deferential,' and the defendant must overcome a 'strong presumption . . . that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Id.* (quoting *Strickland*, 446 U.S. at 689).

The "actual prejudice" test requires a showing "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The court must consider "the totality of the evidence before the judge or jury" when measuring the prejudicial effect. *Turner*, 699 F.3d at 584 (quoting *Stephens v. Hall*, 294 F.3d 210, 218 (1st Cir. 2002)). Factors that are commonly considered include the strength of the prosecution's case, the effectiveness of the defense presented at trial, and the potential for new evidence and new avenues for cross-examination to undermine the credibility of government witnesses. *Id.*

As to the jury consultant's recommendations following the mock trial, the state court found that (1) the ages of the available jurors were older than the age range recommended by the consultant; (2) there was no evidence about the qualifications of the jury consultant or his knowledge of the jury pool; (3) there was no evidence that the failure to follow the consultant's recommendations prejudiced Petitioner; and (4) Petitioner presented no evidence by which to compare counsel's performance at the trial, or the court's rulings at trial, with the information presented at the mock trial. (Post-conviction Decision at 3.) Petitioner has cited no evidence to rebut the presumption that the court's factual determinations are correct, nor has he shown that the post-conviction court's findings are unreasonable. *See* 28 U.S.C. § 2254(d)(2), (e)(1).

Petitioner next argues that trial counsel was ineffective by failing to subpoena a nurse who examined the victim. (Petition at 20; Amended Reply at 3.) The state court concluded that Petitioner did not demonstrate how the testimony of the nurse would have affected the outcome of

the trial. (Post-conviction Decision at 4.) In concluding that Petitioner was not prejudiced by the decision not to call the nurse as a witness, the court noted that the nurse's report was admitted in evidence, and counsel argued that the report reflected the lack of any physical injuries to the victim consistent with an assault. (*Id.*) In his amended reply and in his testimony at the post-conviction hearing, Petitioner argued that the nurse's report showed that the victim's story changed and that this should have been questioned. (Amended Reply at 3; Post-conviction Tr. at 26-28.) Particularly given the admission of the nurse's report, Petitioner has not demonstrated that the state court post-conviction findings were incorrect or unreasonable, pursuant to section 2254(d)(2), (e)(1), or that the post-conviction decision was either contrary to or involved an unreasonable application of federal law as determined by the Supreme Court, pursuant to section 2254(d)(1). That is, even if evidence generated from the nurse's examination was significant, the evidence was presented for the jury's consideration through the nurse's report. Petitioner, therefore, cannot establish that he was prejudiced by his counsel's decision not to call the nurse at trial.

Petitioner also argues that trial counsel was ineffective for failing to call a computer expert. (Petition at 22; Reply at 2.) The state court found that the expert would have testified that the victim did not see certain pornographic images on a computer. (Post-conviction Decision at 4; Post-conviction Tr. at 30.) The court concluded that because the images were not admitted in evidence, the issue was moot, and thus counsel's decision not to call the computer expert reflected appropriate judgment by counsel. (Post-conviction Decision at 4; Post-conviction Tr. at 66-67.) Petitioner presents no evidence on this point. Instead, he simply asserts that the testimony of the computer expert would have been favorable. (Petition at 22; Reply at 2.) Petitioner must provide facts that support his claims. *See David v. United States*, 134 F.3d 470, 478 (1st Cir. 1998) ("To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities

or drop self-serving hints that a constitutional violation lurks in the wings.") In the absence of any facts to support his contention, Petitioner has failed to meet his burden under section 2254(d).

Petitioner further contends that trial counsel was ineffective because counsel did not call alternate suspects as witnesses at trial. (Petition at 18.) He alleges that two individuals with whom the victim's mother had relationships, and the victim's father, "could easily have been the perpetrators," and that the victim either mistakenly identified the wrong perpetrator or lied about the identity of the perpetrator. (*Id.* at 18-19; Post-conviction Tr. at 31-33.) The state court concluded that Petitioner's evidence was speculative, and that he had failed to demonstrate that the evidence about alternate suspects would have been admissible at trial or probative of Petitioner's guilt. (Post-conviction Decision at 4.) Petitioner has offered no facts from which one could reasonably conclude that the proposed alternative suspects perpetrated the crimes. Petitioner, therefore, has failed to demonstrate in his section 2254 petition either that the state court post-conviction findings were incorrect or unreasonable, pursuant to section 2254(d)(2), (e)(1), or that the post-conviction decision was either contrary to or involved an unreasonable application of federal law as determined by the Supreme Court, pursuant to section 2254(d)(1).

Petitioner maintains that trial counsel was ineffective because counsel did not call all of the witnesses whose names appeared on a witness list that counsel had prepared. (Petition at 20; Post-conviction Tr. at 3, 67-68.) Petitioner alleges that "[t]welve witnesses were not called." (Petition at 20.)[15] The court concluded that although counsel had prepared a list of thirteen

---

[15] The witnesses who testified at trial were the victim's mother, the victim, the victim's guidance counselor, and the victim's baby-sitter, all of whom testified for the State. (Trial Tr. I at 73; Trial Tr. II at 37-38, 49, 64-67.) The witnesses who testified for Petitioner were a children's services caseworker with the Department of Health and Human Services, a detective with the Maine State Police, and Petitioner. (Trial Tr. II at 170-72, 203-04; Trial Tr. III at 26-27.) Petitioner mentions in his section 2254 petition that the victim's foster mother did not testify. (Petition at 23.) At the conclusion of counsel's offer of proof and argument regarding the victim's foster mother, counsel represented that he had decided not to call her as a witness because the court had ruled that counsel would not be permitted to use extrinsic evidence in the course of his direct examination of that witness. (Trial Tr. II at 154, 160-61, 167-68.) Petitioner also complains that counsel included on his list of potential witnesses the victim's baby-sitter, whose

18

potential witnesses for trial, the testimony of most of these witnesses either became irrelevant or, if admitted, would not have altered the outcome of the trial. (Post-conviction Decision at 4-5.) Petitioner has not provided or cited any facts to support the conclusion that the testimony of any of the witnesses would have produced a different result at trial. Petitioner thus has failed to demonstrate that the court's post-conviction decision on this issue was contrary to or involved an unreasonable application of federal law as determined by the Supreme Court, or was based on an unreasonable determination of the facts, pursuant to 28 U.S.C. § 2254(d).

Petitioner contends that trial counsel's closing argument was ineffective because counsel said, "what happens in the house stays in the house." (Petition at 21; Trial Tr. IV at 18, 25, Record, Vol. I.) This issue was raised in the post-conviction hearing, but was not explicitly addressed in the post-conviction decision. (Post-conviction Tr. at 73.) A federal court's "deference" to the statutory presumption of correctness "extends not only to express findings of fact, but to the implicit findings of the state court." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006); *see also Campbell v. Vaughn,* 209 F.3d 280, 285-86 (3d Cir. 2000) ("In interpreting [28 U.S.C. § 2254(e)(1)], the Supreme Court has held that an implicit finding of fact is tantamount to an express one, such that deference is due to either determination.") (citing *Parke v. Raley,* 506 U.S. 20, 35 (1992); *Marshall v. Lonberger,* 459 U.S. 422, 432–33 (1983); *LaVallee v. Delle Rose,* 410 U.S. 690, 692 (1973) (per curiam)). The state court implicitly rejected Petitioner's claim that counsel was ineffective in closing argument; in the context of the entire case, and counsel's entire closing argument, the state court's implicit finding was not unreasonable, and, therefore, Petitioner's claim fails, pursuant to section 2254(d)(2).

---

testimony was not helpful to Petitioner. (Petition at 20-21.) The State called that witness to testify. (Trial Tr. II at 49.)

### c. Ineffective assistance at sentencing

Petitioner argues that the state court erred in its post-conviction decision when the court concluded that Petitioner did not receive ineffective assistance of counsel at sentencing. (Petition at 20; Post-conviction Decision at 5.) Petitioner alleges that counsel presented Petitioner in a negative light, failed to prepare Petitioner, and failed to present mitigating evidence.

The court found that counsel represented to the court that he did not anticipate that Petitioner would apologize or accept responsibility, and Petitioner acted in accordance with counsel's representation. Counsel's representation, therefore, could not be considered prejudicial. (Post-conviction Decision at 5; Sentencing Tr. at 35.) The court also noted that the two witnesses whom Petitioner requested testify at sentencing were present and testified. (Post-conviction Decision at 5-6.) Finally, the court rejected Petitioner's allegation that counsel should have presented more positive background information regarding Petitioner's education, military service, and employment, concluding that this information would not have affected the sentence. (Post-conviction Decision at 6; Post-conviction Closing Argument at 7, Record, Vol. II.)

The post-conviction court did not explicitly address Petitioner's argument that counsel failed to prepare him for sentencing. (Post-conviction Closing Argument at 6.) However, the court noted that counsel had conferred with Petitioner in preparation for sentencing, and one can reasonably infer from the post-conviction decision that the court found that counsel did not provide ineffective assistance in preparing Petitioner for sentencing. (Post-conviction Decision at 5.) *See Garcia*, 454 F.3d at 444; *Campbell,* 209 F.3d at 285-86.

The Supreme Court has recognized a right to counsel at sentencing. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012) (citing *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Mempa v. Rhay*, 389 U.S. 128 (1967)). The standard set forth in *Strickland* applies to the assistance of

counsel at sentencing. *Glover*, 531 U.S. at 200, 203. In this case, Petitioner has not identified any facts to support his contention that his counsel was ineffective at sentencing. Petitioner, therefore, has failed to demonstrate that the court's post-conviction decision on this issue was contrary to or involved an unreasonable application of federal law as determined by the Supreme Court, or was based on an unreasonable determination of the facts, pursuant to 28 U.S.C. § 2254(d).

### d. Ineffective assistance in the sentencing appeal

Petitioner contends that he received ineffective assistance of counsel in his sentencing appeal because counsel failed to argue that the sentencing court misapplied the state sentencing analysis set forth in *State v. Hewey*, 622 A.2d 1151, 1154-55 (Me. 1993), and codified at 17-A M.R.S. § 1252-C. (Petition at 20-21.) *See State v. Stanislaw*, 2013 ME 43, ¶ 15, 65 A.3d 1242. (Post-conviction Closing Argument at 7.) Specifically, Petitioner alleges that the sentencing court erred by taking into account the victim's age at two different steps of the sentencing analysis, and that counsel failed to raise the point on appeal. (*Id.*)

The state court concluded that the issue was waived in the post-conviction proceeding because (1) the claim of ineffective assistance as to the sentencing appeal was not included in the amended petition for post-conviction review, and (2) Petitioner did not cite the underlying sentencing analysis issue in his application for a discretionary appeal of the sentence. (Post-conviction Decision at 6.)

A claim that is based on alleged errors of state law is not cognizable in a federal habeas action. *See* 28 U.S.C. § 2254(a); *Lewis*, 497 U.S. at 783 (noting that errors of state law "are not cognizable in federal habeas proceedings"); *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) (holding that "an error in . . . the application of state sentencing rules . . . does not present a cognizable claim for federal habeas relief"). Petitioner's underlying argument relates to state

sentencing law, and as such it is not cognizable in a proceeding under section 2254. Because the underlying issue is not cognizable, Petitioner correspondingly may not pursue a federal habeas claim that counsel was ineffective for failing to appeal the issue. When a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail," and the Court need not determine whether the petitioner has demonstrated "'cause and actual prejudice.'" *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (quoting *United States v. Frady*, 456 U.S. 152, 167 (1982)).[16]

## B.    The Unexhausted Claims

Petitioner includes a number of additional arguments that he did not exhaust in the state court proceedings. (Petition at 21-23.) The arguments include that counsel failed to cross-examine the victim and her mother on certain issues; that counsel failed to use a demonstrative exhibit consisting of a list of the weaknesses in the testimony of the State's witnesses; and that counsel's trial strategy to "hide" Petitioner's lifestyle was unsuccessful. (Petition at 21-23.) Petitioner also

---

[16] It is not clear whether Petitioner intends to assert a claim that he received ineffective assistance of counsel during the course of his direct appeal. (Petition at 19.) In any event, however, such a claim is procedurally defaulted because post-conviction counsel failed to raise it, but the failure of post-conviction counsel to raise the issue does not excuse the procedural default. "There is no constitutional right to an attorney in state post-conviction proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). The Supreme Court has held that ineffective assistance of post-conviction counsel in an initial-review collateral proceeding may excuse the failure to bring a claim of ineffective assistance of trial counsel. *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012). However, three circuit courts of appeal have held that *Martinez* does not apply to claims of ineffective assistance of appellate counsel. *See Reed v. Stephens*, 739 F.3d 753, 778 n. 16 (5th Cir.2014) (holding that the *Martinez* exception does not apply to claims concerning ineffective assistance of appellate counsel); *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) (holding that "ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel"); *Banks v. Workman*, 692 F.3d 1133, 1148 (10th Cir. 2012) (same). *But see Ha Van Nguyen v. Curry,* 736 F.3d 1287, 1295 (9th Cir. 2013) (holding that "the *Martinez* standard for 'cause' applies to all Sixth Amendment ineffective-assistance claims, both trial and appellate, that have been procedurally defaulted by ineffective counsel in the initial-review state-court collateral proceeding"). Given that the claim in *Martinez* involved trial counsel, which fact the Supreme Court repeatedly referenced, and given that the Supreme Court explicitly stated that "[t]he rule of *Coleman* governs in all but the limited circumstances recognized here," *Martinez,* 132 S.Ct. at 1320, the plain reading of *Martinez* supports a determination that the *Martinez* exception (i.e., that ineffective assistance of post-conviction counsel can excuse a procedural default) applies only where post-conviction counsel's alleged ineffectiveness relates to the failure to raise in the post-conviction proceeding the issue of *trial* counsel's effectiveness.

claims that the cumulative effect of his counsel's failings is sufficient to justify relief.  (Petition at 22.)

Under Maine law, a claim of ineffective assistance of counsel must be raised in a post-conviction proceeding, pursuant to 15 M.R.S. §§ 2121-2131.  *See State v. Ford*, 2013 ME 96, ¶ 21 n.6, 82 A.3d 75.  Petitioner was, therefore, required to raise all of his ineffective assistance claims in the state court post-conviction proceeding.  He did not assert all of the claims in the state court proceeding and thus the claims are defaulted.

The Supreme Court has held that to overcome a default caused by ineffective assistance of counsel at the initial-review collateral proceeding (i.e., the state post-conviction proceeding), a prisoner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."  *Martinez v. Ryan*, 132 S. Ct. 1309, 1318 (2012).  Here, Petitioner's unexhausted claims of ineffective assistance of trial counsel involve counsel's tactical decisions.  Counsel's tactical decisions are entitled to deference, and Petitioner must overcome a strong presumption that each of the decisions reflects a sound trial strategy.  *See Bucci*, 662 F.3d at 30 (quoting *Strickland*, 446 U.S. at 689).  Petitioner has presented no evidence to overcome this presumption, and, therefore his claim of ineffective assistance of counsel as it relates to these allegations fails.

Petitioner also appears to include in his section 2254 petition several stand-alone claims, *i.e.*, claims that are independent of his claims of ineffective assistance of counsel.  For instance, Petitioner contends that the victim and her mother colluded against Petitioner and that the victim's foster family had "drugged [the victim] into submission."  (Petition at 21-22; Amended Reply at 4.)  These claims are procedurally defaulted because they were not exhausted in state court.  *See* 28 U.S.C. § 2254(b)(1)(A).  Furthermore, Petitioner has not shown either that these facts "could

not have been previously discovered through the exercise of due diligence, pursuant to section 2254(e)(2)(A)(ii), or that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense," as provided in section 2254(e)(2)(B). Petitioner's allegations also fail on the merits because they lack any support. *See David*, 134 F.3d at 478. [17]

Finally, Petitioner contends that the court erred by considering Petitioner's past unprosecuted criminal behavior and his courtroom conduct. (Petition at 21-22.) Contrary to Petitioner's argument, the court specifically noted that although there were allegations of past criminal conduct, there were no past convictions. (Sentencing Tr. at 44.) In any event, the stand-alone claims relate to state sentencing law and, as such, they are not cognizable in a federal habeas action. *See* 28 U.S.C. § 2254(a); *Lewis*, 497 U.S. at 783; *Dellinger*, 301 F.3d at 764.

## III. CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases. The recommendation is that the Court dismiss Petitioner's petition for habeas relief under 28 U.S.C. section 2254, and that the Court deny a

---

[17] In support of his allegation of collusion between the victim and her mother, Petitioner cites to a letter from the victim, read aloud by the State at sentencing. (Petition at 22; Sentencing Tr. at 9.) In the letter, the victim states that she is angry at her mother. (Sentencing Tr. at 9.) Petitioner also cites to the testimony of the mother, on cross-examination, that when she and the victim were in a counseling session together, the mother said that she had not watched a pornographic film with the victim, and the victim paused and then agreed with the mother that she watched the film with Petitioner but not with the mother. (Petition at 22; Trial Tr. II at 19.) Neither of these facts supports the allegation of collusion. In support of Petitioner's allegation that the victim was drugged at trial, he alleges only, "I could see it at the trial and sentencing." (Petition at 22.) Petitioner also alleges in his federal petition that the State coerced the victim's mother into giving false testimony as part of a plea bargain. (Petition at 21; Amended Reply at 4.) In his state court post-conviction petition, Petitioner made significantly milder allegations about the prosecution's actions with respect to the victim's mother's testimony, stating simply that the prosecutor had coached her. (State Court (Pro Se) Petition at 4, Record, Vol. II.) Although it could be argued that the issue of the prosecution's access to and influence upon the victim's mother was not procedurally defaulted, Petitioner's argument fails on the merits because he states no facts in support of his claim of prosecutorial misconduct; rather, he states only that the situation led him to assume that the prosecutor had threatened and coerced the witness. (Petition at 21.)

certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 31ˢᵗ day of December, 2014.